UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHALIMAR HOWARD,

               Plaintiff,                              Case Number 20-11236

v.                                              Honorable David M. Lawson

LIVINGSTON COUNTY, CRAIG
CARBERRY, WILLIAM
VAILLIENCOURT, and MIKE TAYLOR,

               Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

Plaintiff Shalimar Howard, a probation officer employed by the Michigan Department of Corrections (MDOC), alleges in a complaint that she was persecuted and falsely charged and arrested by the defendants after she publicly criticized their abuse of prosecutorial discretion when making charging decisions affecting her probationers. The matter is before the Court on motions to dismiss filed by defendant Craig Carberry, a Michigan State Police investigator, and by Livingston County and its prosecutors. The plaintiff also filed a motion to strike defendant Carberry's reply brief on the ground that it raises new issues that were not addressed in the opening motion brief or the plaintiff's response. Although defendant Carberry's reply brief mostly presents proper rebuttal arguments, the attached exhibits and arguments referencing them are improper and will be stricken. The plaintiff's claim against Carberry based on the Fourteenth Amendment is duplicative of and subsumed by her Fourth Amendment claim, so the former claim will be dismissed. The plaintiff's claims against defendants Vailliencourt and Taylor under the Fourth Amendment are barred by prosecutorial and sovereign immunity. However, the complaint states sufficient facts to support the remaining claims against the defendants and overcomes any

immunity defenses asserted at this stage of the case.  Therefore, the Fourteenth Amendment claim against defendant Carberry and the Fourth Amendment claim against defendants Vailliencourt and Taylor will be dismissed.  The motions to dismiss will be denied in all other respects.

I.

The defendants have challenged the sufficiency of the pleadings under Federal Rule of Civil Procedure 12(b)(6), so the following facts are stated as alleged in the complaint.

Defendant Craig Carberry is a detective sergeant with the Michigan State Police.  In 2017, defendant William Vailliencourt was the elected prosecutor of Livingston County, Michigan, and defendant Mike Taylor was an assistant prosecutor.  Plaintiff Shalimar Howard has been a probation officer for the State of Michigan's Department of Corrections since 2002.  Since February 2010, she was assigned to the MDOC's Livingston County Probation Office, where she frequently worked with the defendants in the course of her duties.

Howard alleges that the MDOC had a policy of "collaborative case management," which afforded probation officers substantial discretion when deciding how to handle violations by their probationers and whether to seek formal charges based on a violation.  She asserts that defendant Vailliencourt had a "heavy handed" policy toward probationers and frequently sought to override probation officers' charging decisions.  Also, Howard observed that Vailliencourt exercised his charging discretion in a discriminatory manner, selectively choosing to pursue charges against certain classes of probationers and not others.

On March 23, 2017, Howard was called as a witness to testify in a domestic civil matter in Livingston County, Michigan circuit court, where one of her probationers was involved.  She gave truthful testimony, although the judge interrupted her frequently and refused to allow her to explain

certain parts of her testimony. Howard was not called to participate in a later hearing in the same case in June 2017, although it involved the same probationer.

Howard alleges that, after the March 23, 2017 hearing, defendants Vailliencourt and Taylor "undertook a secretive investigation" that included reviewing a video recording of the hearing, ordering a transcript, and obtaining copies of the plaintiff's notes from the probationer's MDOC file. Vailliencourt subsequently asked defendant Carberry to investigate whether Howard committed perjury during her hearing testimony.

On August 18, 2017, Vailliencourt sent a letter to the plaintiff's supervisor in which he accused the plaintiff of committing perjury at the March 23rd hearing. The letter further stated that the plaintiff would not be called by Livingston County prosecutors to testify in any proceeding, the prosecutor's office would not pursue charges against any probationer in response to any request by her, and she was banned from entering the Livingston County prosecutor's offices. The MDOC's internal affairs division investigated the perjury allegations and took the plaintiff's statement, but the department eventually determined she had done nothing wrong, and the plaintiff was not disciplined in any way.

The plaintiff alleges that on January 12, 2018, Carberry, Taylor, and Vailliencourt "procured a warrant" for Howard's arrest. The plaintiff asserts, however, that defendant Carberry's investigation, on which the criminal complaint was based, was a "sham" and "merely repeated" the cursory inquiries that defendants Vailliencourt and Taylor had performed, which had not produced any evidence that the plaintiff lied under oath. The pleadings are vague on the specific basis of the perjury charges, but it appears that they arose from the defendants' belief that the plaintiff had testified falsely during the domestic proceeding that her probationer had not violated the terms of his probation, when her notes in the case file memorialized several instances

where he had violated various probation conditions but was not formally charged.  In response to the filing of perjury charges, the MDOC suspended the plaintiff without pay.

In May 2019, the state district court held a preliminary examination, during which defendant Vailliencourt withdrew one of the perjury charges.  On August 2, 2019, the state trial court granted the plaintiff's motion to dismiss and quash the remaining two charges and dismissed the case against her, after it found that there was no probable cause to suspect that she had committed any perjury offense.

The complaint in this case pleads claims via 42 U.S.C. § 1983 for (1) false arrest and detention without probable cause under the Fourth Amendment, (2) First Amendment retaliation in response to the plaintiff's protected public speech about the defendants' discriminatory practices, (3) arbitrarily and capriciously pursuing an unwarranted criminal prosecution that tarnished the plaintiff's reputation, in violation of her substantive due process rights under the Fourteenth Amendment, and (4) conspiracy by the individual defendants to pursue an unfounded prosecution despite the knowledge by all defendants that there was no evidence that the plaintiff had committed any crime.  The complaint further pleads that Livingston County is liable for the actions of defendants Taylor and Vailliencourt because it failed adequately to train and discipline its employees and to enforce policies against making improper charging decisions, and defendant Vailliencourt was the final authority and acted for the County when he decided to pursue the unfounded charges against the plaintiff.  Finally, the complaint pleads one count under state law of tortious interference with the plaintiff's employment relationship with MDOC, based on the defendants' obstruction of her job duties and instigation of an unwarranted investigation.

Defendant Carberry responded to the complaint with a motion to dismiss, arguing that the complaint does not state sufficient facts to support the conclusory allegations of wrongdoing

against him.  The Livingston County defendants (Vailliencourt, Taylor, and the County) also filed a motion to dismiss raising multiple arguments, including that the pleading is factually deficient and interposing various immunity defenses.  The motions are fully briefed, and oral argument will not aid in their disposition.  Therefore, the Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2).

II.

The defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the viability of the complaint.  The Court accepts the pleaded facts (but not the unsupported conclusions) as true and determines whether the plaintiff is entitled to legal relief after crediting all the factual allegations in the complaint.  *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  All reasonable inferences are drawn in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  Unsupported conclusions will not suffice.  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief.  *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)."  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

A.

To begin, the plaintiff takes issue with defendant Carberry's reply brief in support of his motion to dismiss, contending that it addresses issues not raised in the opening motion brief and attempts to raise new issues not addressed in either the motion or response.  She points out that two new arguments were raised that purportedly were supported by exhibits extrinsic to the

pleadings that were attached to the reply, consisting of the criminal complaint for perjury and Carberry's investigation report.  And she says that the arguments that merely challenge the truth of the pleaded facts are irrelevant to a motion under Rule 12(b)(6), which should focus on the adequacy of the complaint standing alone.

Defendant Carberry argues that he did not address "new issues" in his reply but merely pointed out and disputed allegations in the plaintiff's response brief.  He also contends that the exhibits he attached may be considered because they were referenced in the complaint and are central to the plaintiff's case, and they support his assertion that he was not the one who swore out the arrest warrant.

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings.  *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  But the Court also may consider the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010).  However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

The defendant's Rule 12 motion raises a textbook challenge to the sufficiency of the pleadings based on (modern) hornbook law holding that "legal conclusions" may not be credited by the Court and his argument that no specific facts were stated in the complaint suggesting that

his conduct violated the plaintiff's rights.  He also mounts a straightforward argument that as a matter of law a police officer may not be held liable for "false arrest" where the plaintiff was arrested under a facially valid warrant, unless it is alleged that the officer either deliberately or recklessly made false statements on which the magistrate relied when authorizing the warrant.

Nothing in the defendant's opening brief suggests that the claims are defective because the arrest warrant was "not sworn" by him, or that the claims against him fail as a matter of law because his case file conclusively demonstrates that his investigation was "sufficient" and that he considered all of the available evidence.  Moreover, the documents attached as exhibits to the reply brief are extrinsic to and neither were incorporated in nor specifically referenced in the complaint. The arguments in the plaintiff's response all were premised exclusively on the allegations actually framed within the four corners of the complaint.  It is axiomatic, of course, that consideration of a challenge to the sufficiency of the pleadings ordinarily is confined to assessment of just that — the pleadings, *see* Fed. R. Civ. P. 7(a) (defining "pleadings" to include only a complaint, counterclaim, third-party complaint, answers to those documents, and a reply if ordered by the Court) — not whatever assortment of evidentiary materials a movant may happen to dig up and attach to his motion papers.

The new arguments raised by the defendant in his reply brief, which are premised on exhibits extrinsic to the pleadings, essentially amount to a premature motion for summary judgment disguised as a reply brief supporting a motion to dismiss.  Moreover, it is unclear what exactly the defendant Carberry means when he asserts that the warrant was "not sworn" by him, since he plainly is named as the "complainant" in the criminal complaint.  Felony Compl., ECF No. 28-2, PageID.413.  The signature line for "complaining witness" conspicuously was left blank on the document, *see id.* at PageID.414, but Carberry evidently does not dispute that the complaint

and arrest warrant were issued based on statements made and information supplied by him, which were derived from his investigation. The fact that the charging document names Carberry as the "complainant" corroborates rather than contradicts the plaintiff's allegation that together the individual defendants "procured a warrant" for her arrest on perjury charges.

At any rate, though, because the novel arguments in Carberry's reply brief are little more than an attempt prematurely to litigate the parties' differing views about what that record evidence may prove and are not proper at this stage of the case, the Court will strike from the record defendant Carberry's exhibits (ECF No. 28-2, 28-3) and his arguments that reference them.

B.

As to the merits of the motion to dismiss, Carberry contends that the plaintiff's allegations that he conducted a "sham investigation," that there was not probable cause for the perjury warrant, and that he was part of a conspiracy are all conclusory and not sufficiently supported by any pleaded facts. He says that the complaint, therefore, does not state any constitutional claims against him. And he adds that in the absence of any specific allegation that the defendant made up evidence or made false statements, no viable claim for "false arrest" can proceed where Carberry did not arrest the plaintiff or swear to an affidavit in support of the arrest warrant.

In her complaint, the plaintiff accuses Carberry of an illegal seizure (false arrest) under the Fourth Amendment, a substantive due process violation under the Fourteenth Amendment, and conspiring with the other defendants to violate her federal civil rights. Those claims are brought under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*,

799 F.3d 600, 607 (6th Cir. 2015) (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

1.

As the Sixth Circuit recently "clarified," "the Fourth Amendment does not adopt separate bans on 'false arrests,' 'false imprisonments,' and 'malicious prosecutions.' It establishes a singular ban on 'unreasonable' 'seizures.'" *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160-61 (6th Cir. 2021) (quoting U.S. Const. amend. IV). "And the Supreme Court has held that this uniform ban bars all pretrial detentions without probable cause to believe that a detainee has committed a crime — whether or not the detention comes before or after formal 'legal process' (like an arrest warrant or an indictment)." *Id.* at 1161. "False arrest, false imprisonment, and malicious prosecution are instead common-law torts," which "[t]he Supreme Court has sometimes relied on . . . not to interpret the Fourth Amendment, but to establish the rules for § 1983 claims." *Ibid.* "[F]alse-arrest-and-imprisonment claim[s] and [] malicious-prosecution claim[s] are thus specific versions of a general unreasonable-seizure claim alleging the same constitutional theory: that the officers seized [the plaintiff] without probable cause." *Ibid.* In a civil action claiming a violation of rights via section 1983, the plaintiff's "complaint [does] not need to expressly plead legal theories; it need[s] [merely] to plead factual allegations that impliedly established at least one viable theory." *Id.* at 1160.

"'A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Hart v. Hillsdale County*, 973 F.3d 627, 635 (6th Cir. 2020) (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)). As with all motions to dismiss, the Court considers the sufficiency of the pleading of a false arrest claim "while accepting the plaintiff's factual allegations as true and drawing all reasonable inferences in [her] favor," and

the Court "ask[s] only whether, 'reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right.'" *Ibid.* (quoting *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* (quotations omitted).

The plaintiff's complaint states minimal but sufficient facts plausibly to make out a claim of false arrest under the Fourth Amendment, where she alleges that defendant Carberry was directed to perform an investigation of potential perjury charges, reviewed a limited selection of specific materials that disclosed "no evidence" that the plaintiff lied under oath, and, nevertheless, submitted a complaint for criminal charges alleging that she made false statements under oath during the March 2017 hearing in a domestic proceeding. The defendant has submitted information suggesting that the plaintiff's complaint does not tell the whole story, and that she may face a genuine contest in proving her case. But the question of whose account of the investigation should be credited is one for a jury to take up at trial, not a matter that may be resolved by the Court at the pleading stage and before the record fully has been developed.

The plaintiff alleges that Carberry reviewed (1) a video recording of her March 2017 testimony, (2) a transcript of the hearing, and (3) copies of her notes from the probationer's file. She alleges that none of those materials disclosed any information suggesting that she had lied under oath about her probationer's conduct. The pleadings are vague on the basis of the perjury charges, but it appears to be undisputed that Carberry was the complainant on a request for criminal charges, which stated that the plaintiff had made certain specific false statements under oath about her probationer's compliance with the terms of his probation. The Sixth Circuit has held that where an officer is aware that the circumstances do not support a criminal charge, but he

nevertheless submits a request for charges on a specific offense, the plaintiff has made out a viable claim for false arrest, since, by definition, a request for charges implicitly embodies the officer's assertion that known facts would sustain all of the elements of the requested charge. *Hart v. Hillsdale County*, 973 F.3d 627, 635-36 (6th Cir. 2020) (finding an adequately pleaded false arrest claim where the plaintiff alleged that the defendant police officer submitted a warrant request for violation of a sex offender registration law that stated that the plaintiff failed to register but omitted the fact that the plaintiff had no obligation to register).

The facts here — so far as they are alleged in the complaint — are indistinguishable from *Hart*. The plaintiff says that Carberry reviewed certain materials, found no evidence of perjury, but nevertheless proceeded to submit a complaint of perjury against her. Carberry asserts that he conducted a much more thorough inquiry than the plaintiff suggests; but that is not what the complaint alleges. At this stage, the Court must accept the facts as alleged, and here they are sufficient to state a claim that the defendant sought the plaintiff's arrest despite having found no evidence that she committed any crime. That is enough for the first count of her complaint to survive the pleading challenge.

### 2.

The Due Process Clause found in the Fourteenth Amendment has both a procedural and a substantive component. *Doe v. DeWine*, 910 F.3d 842, 851 (6th Cir. 2018). Both act as a check on the power of the government vis-à-vis its citizens. A procedural due process claim usually involves the deprivation of a liberty or property interest by the government without appropriate procedural protections, most commonly fair notice and a fair opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the

procedures used." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "Substantive due process is '[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). It prohibits the government from infringing on "fundamental rights" without sufficient justification. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). "To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). "What seems to be required is an intentional infliction of injury . . . or some other governmental action that is 'arbitrary in the constitutional sense.'" *Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997) (quoting *Lewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994)).

Defendant Carberry is correct that the Fourteenth Amendment claim should be dismissed, but not for the reason he suggests. As discussed above, there are sufficient facts pleaded to make out a claim that the defendant sought the plaintiff's arrest knowing that there was no probable cause to believe she had committed any crime. But the allegations of an arrest without probable cause are the entire and exclusive basis of the due process claims against defendant Carberry. The concept of substantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments. *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006)). Where, as here, the plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available, *see County of Sacramento v. Lewis*, 523 U.S. 833, 842

(1998). The Sixth Circuit has held that where the factual basis of a due process claim entirely overlaps with the ground of a parallel claim of false arrest without probable cause, the Fourth Amendment governs the claim, and the alternative Fourteenth Amendment claim should be dismissed. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005) (holding that "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area.").

The Court will dismiss the Fourteenth Amendment claim (Count III) against this defendant.

## 3.

A civil conspiracy under section 1983 is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To prevail, the plaintiff must offer evidence that (1) a single plan existed; (2) the alleged conspirators shared in the general conspiratorial objective to deprive the plaintiff of her constitutional or federal statutory rights; and (3) an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Bazzi*, 658 F.3d at 602. However, claims of conspiracy depend on the viability of the underlying substantive section 1983 and state law claims, because "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) (quoting *Early Detection Center, P.C. v. N.Y. Life Insurance Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (1986)).

The plaintiff adequately has made out the elements of a claim for civil conspiracy because she has alleged that defendant Carberry, along with defendants Taylor and Vailliencourt, sought criminal charges against her despite knowing that there was "no evidence" to support any charge of false swearing.  Contrary to the defendant's argument, the plaintiff is not required to allege that there was any express statement of collusion by the conspirators on a particular occasion, only that the defendants acted together to achieve the shared goal of violating her constitutional rights.  The defendants' shared purpose may be inferred from the alleged facts that Vailliencourt submitted a request for investigation of potential perjury charges, which was assigned to Carberry; Carberry took up the investigation; and thereafter he submitted a criminal complaint against the plaintiff — allegedly, despite having found no evidence that would support perjury charges.

The inference of a common unlawful purpose also is supported by the allegation that Carberry, rather than undertaking his own investigation, merely conducted a perfunctory review of nothing more than the sparse materials that previously were gathered and reviewed by the other defendants.  Those facts, if proven, could support a jury's determination that Carberry agreed essentially to rubber stamp Vailliencourt's and Taylor's request for criminal charges, without undertaking any diligent investigation of his own, and despite having found in the materials that they supplied to him no evidence that any crime was committed by the plaintiff.

### C.

In their motion to dismiss, the Livingston County defendants argue that (1) their individual conduct is protected by absolute prosecutorial immunity; (2) the official capacity claims against them are barred by sovereign immunity because when carrying out their prosecutorial duties they acted as agents of the State of Michigan, (3) under Michigan law they are afforded governmental immunity against the state law tortious interference claim for acts performed within the scope of

their official duties, (4) the Fourth Amendment claims are barred by qualified immunity, and the plaintiff does not plead any particular facts showing what individual part each defendant played in the prosecution, (5) the First Amendment claims similarly are barred by qualified immunity because the plaintiff does not allege any specific facts to establish that she engaged in any protected speech, or any facts to establish a causal connection between any such speech and the retaliation, (6) the Fourteenth Amendment claim is based on a false arrest without probable cause and is precluded because it is governed by the Fourth Amendment instead, (7) the plaintiff has failed adequately to plead that the injury to her reputation was sufficiently grievous, since she does not allege that her employment was ended or materially altered due to the defendants' conduct, (8) the civil conspiracy allegations are "vague" and "conclusory" and do not specify any details of the supposed plan or the various defendants' parts in it, (9) the claim against the County is unsatisfactory because the plaintiff presents similarly "vague" and "conclusory" allegations about the County's policies and practices, devoid of any detail, (10) since Vailliencourt acted as an agent of the State, the County cannot be held liable for his conduct even if he was the "final decision maker" with respect to the lodging of perjury charges, and (11) the complaint does not plead any facts to show that defendant Vailliencourt's letter to MDOC regarding refusal to deal with the plaintiff in her professional capacity was motivated by any unlawful purpose, nor are there any facts alleged to show that the letter "actually interfered" with the plaintiff's employment, and in fact she remains employed as a probation officer to this day.

The plaintiff disputes each of these arguments.

### 1.

The plaintiff has pleaded sufficient facts to avoid dismissal at this early stage on the basis of absolute prosecutorial immunity, at least for most of her claims. Certainly, the filing of formal

charges was a core prosecutorial function to which absolute immunity applies, since it is well settled that a prosecutor has absolute immunity for all acts "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, it is equally well established that a prosecutor enjoys absolute immunity only when acting as an advocate for the state, and not when he "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000); *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993) ("[A] prosecutor is not entitled to absolute immunity when acting as an administrator or investigator, for example, when a prosecutor gives legal advice to police.").

Here, the complaint alleges that defendants Vailliencourt and Taylor engaged in their own plenary investigation of suspected misconduct by the plaintiff, which included searching for clues and obtaining evidence, in an attempt to assemble probable cause — which, allegedly, ultimately was entirely unproductive. Nevertheless, despite finding no evidence of a crime, Vailliencourt then sent a letter to the plaintiff's supervisor accusing her of perjury. The sending of that accusatory letter — allegedly months before any formal charges were filed — has no apparent relationship with the judicial phase of any particular criminal proceeding. Those investigative and inquisitorial activities in which the defendants engaged strayed far beyond the core functions of preparing and presenting the case in a regular criminal prosecution, and the defendants therefore are entitled to immunity for them, if at all, on a qualified basis only.

The Fourth Amendment claim only, as against defendants Vailliencourt and Taylor, because it is based solely on an allegedly false arrest — that is, procurement of an arrest warrant

to initiate a prosecution without probable cause — must be dismissed as barred by prosecutorial immunity.  Not so, however, as to the First and Fourteenth Amendment claims.

2.

As to their conduct comprising the filing of formal charges and during the course of the criminal case against the plaintiff, the defendants also are correct that sovereign immunity bars a suit against them for damages.

A suit against a state official in his or her official capacity amounts to a suit against the state, when determining the question of immunity under the Eleventh Amendment.  *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).  The Eleventh Amendment to the United States Constitution bars section 1983 claims against state officials sued in their official capacities for damages.  *Cady v. Arenac County*, 574 F.3d 334, 342-43 (6th Cir. 2009).  In Michigan, when a county prosecutor brings formal charges in the name of the People of the State of Michigan, he acts as "an agent of the state rather than of" his county.  *Id.* at 345; *see also Pusey*, 11 F.3d at 657 (holding that "a city official pursues her duties as a state agent when enforcing state law or policy.").

However, as to the other conduct involving the investigation and sending an accusatory letter to the plaintiff's employer, sovereign immunity does not apply because there was no connection between those acts and the defendants' state-delegated duty to prosecute state criminal offenses.  As the *Cady* and *Pusey* decisions recognized, sovereign immunity only bars recovery where a prosecutor was acting as a state agent by prosecuting crimes under state law.  The facts here are distinguishable because the investigation and the sending of the accusatory letter had nothing to do with any judicial process surrounding a formal criminal prosecution, since both allegedly occurred before any formal charges were filed against the plaintiff.

- 17 -

As with the prosecutorial immunity defense, the Fourth Amendment claim also will be dismissed against Vailliencourt and Taylor on the basis of sovereign immunity. The other claims, however, are not subject to this defense.

3.

The individual county defendants argue that they are entitled to dismissal of the federal claims on the basis of qualified immunity. That defense consists of two elements: 1) whether the facts alleged make out the violation of a constitutional right; and 2) whether the right was clearly established at the time of the alleged violation. *Cunningham v. Shelby Cnty., Tennessee*, 994 F.3d 761, 764 (6th Cir. 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The Court may take up the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In this case, the defendants' argument focuses on the first element. According to them, the pleadings fail to make out the elements of any cognizable constitutional tort. However, adjudication of this affirmative defense at this early stage is particularly disfavored by the Sixth Circuit. *Hart v. Hillsdale County*, 973 F.3d 627, 635 (6th Cir. 2020) (noting that that court has "repeatedly cautioned [that]'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12'") (quoting *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015)).

Moreover, contrary to the defendants' arguments, the pleaded facts, although somewhat sparse, are sufficient to survive a Rule 12(b)(6) challenge at this early stage of the case to her First Amendment retaliation claim, Fourteenth Amendment substantive due process reputational damage claim, and her civil conspiracy claim.

- 18 -

a.

It is generally accepted that a plaintiff bringing a First Amendment retaliation claim via 42 U.S.C. § 1983 must satisfy three elements: "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  The Sixth Circuit has analyzed causation in two steps: first looking to see if the protected conduct "proximately caused" the adverse action, and then determining if the defendant's motive was "'to punish [the plaintiff] for the exercise of a constitutional right.'" *Paterek v. Village of Armada*, 801 F.3d 630, 646 (6th Cir. 2015) (quoting *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012)).

The defendants argue that the plaintiff has failed to make out a *prima facie* case under the First Amendment because she did not plead facts to show that she engaged in protected speech. However, she plainly alleged that she publicly complained about the defendants' discriminatory charging practices, and, in response, the defendants sought to discredit and exclude her from involvement in such decisions affecting her probationers.  It is well settled that accusations of corruption, illegal conduct, and unlawful discrimination by a public agency are archetypical topics of acute public concern. *Bennett v. Metro. Gov't of Nashville & Davidson County*, 977 F.3d 530, 539 n.4 (6th Cir. 2020) ("Examples of speech that would involve such matters of public concern include . . . speech protesting racial or sexual harassment or discrimination within a public organization." (citing *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 182 (6th Cir. 2008)).  "The Sixth Circuit has 'consistently reiterated that allegations of public corruption 'are

exactly the type of statements that demand strong First Amendment protections.'" *Oakes v. Weaver*, 331 F. Supp. 3d 726, 744 (E.D. Mich. 2018) (quoting *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 468 (6th Cir. 2017)); *Anders v. Cuevas*, 984 F.3d 1166, 1176 (6th Cir. 2021) ("'[A]llegations of corrupt practices by government officials are of the utmost public concern." (quoting *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir. 1989)); *ibid.* (With those core free speech principles in mind, we said in *Marohnic v. Walker*, 800 F.2d 613 (6th Cir. 1986), that '[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.'" (quoting *Marohnic*, 800 F.2d at 616)).

Notably, although the plaintiff was employed by a public agency, the defendants do not contend that she was required to meet the heightened requirements that apply to speech that is bound up with a public worker's employment dispute, for the apparent reason that her relationship with the individual defendants was not one of employee and employer or supervisor and subordinate, since the plaintiff and defendants were employed by distinct public agencies. *C.f. Oakes v. Weaver*, 331 F. Supp. 3d 726, 743-44 (E.D. Mich. 2018) ("Although ordinary citizens asserting conduct protected by the First Amendment must show that their speech touches on matters of public concern, '[p]ublic employee plaintiffs are required to meet additional standards to establish that the speech at issue is constitutionally protected.'").

The defendants do argue, however, that no inference of retaliatory motive may be sustained because the pleadings disclose no facts to suggest such a motive. But the apparent timing of the events, which may be inferred from the chronology outlined in the complaint, along with other pleaded circumstances, adequately sustain this element at the pleading stage. The defendants are correct that no specific date is alleged as to when any protected speech occurred. However, the complaint does state that the plaintiff testified at a hearing involving one of her petitioners in March

2017, the allegedly retaliatory investigation was commenced immediately thereafter, and the defendants' retaliatory actions included excluding her from a subsequent hearing in the same matter in June 2017, followed by the sending of a letter to her employer falsely accusing the plaintiff of perjury in August 2017.  Moreover, the retaliatory conduct had a close circumstantial relationship with the allegedly protected speech because the plaintiff says that she complained about the defendants' discriminatory charging decisions involving her probationers, and they subsequently undertook to manufacture false charges of perjury, and then used those false allegations to support a demand that she be excluded entirely from any involvement in those decisions.  Such a sequence of closely circumstantially related and escalating retaliatory acts has been found to support a viable inference of retaliatory motive.  *Paterek v. Village of Armada*, 801 F.3d 630, 647 (6th Cir. 2015) ("'Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support [the] inference [of a retaliatory motive].'") (quoting *Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002)).

The defendants also argue that the plaintiff has not pleaded facts to establish the causation element of her First Amendment claim, principally because no specific timeline was described in the complaint juxtaposing the occurrences of protected speech relative to the allegedly retaliatory acts.  However, the timing of the events in question is merely one relevant factor, and temporal proximity is not an indispensable requisite for establishing causation.  *Garza v. Lansing School District*, 972 F.3d 853, 868 (6th Cir. 2020) ("As we have explained when discussing causation in the scope of employment discrimination and retaliation actions, '[a]lthough temporal proximity . . . is relevant to the question of whether there exists a causal connection' between two events, it is not dispositive." (quoting *Davis v. Rich Prods. Corp.*, 11 F. App'x 441, 445 (6th Cir. 2001)); *see also Dixon v. Gonzales*, 481 F.3d 324, 335 (6th Cir. 2007) (explaining that "a mere lapse in

time between" two events "does not inevitably foreclose a finding of causality" (citing with approval *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) ("It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's *prima facie* case."))). "To establish causation, [the plaintiff] must demonstrate that [her] protected speech was 'a substantial or motivating factor' of the adverse action." *Anders*, 984 F.3d at 1177 (quoting *Vereecke v. Huron Valley School District*, 609 F.3d 392, 400 (6th Cir. 2010)). "This inquiry is 'essentially but-for cause.'" *Ibid.*

Moreover, the Sixth Circuit has held that temporal relationships between events may be inferred from the historical sequence described in the pleadings, even where some of the operative dates were not explicitly alleged. *Anders*, 984 F.3d at 1178. Here, the sequence of the events that were described in the complaint is relatively short, occurring between March and August 2017, and culminating with the filing of formal charges in January 2018. And, as noted above, other circumstances readily support an inference of a causal relationship, since there was a close connection between the improper conduct about which the plaintiff allegedly complained, and the defendants' continuous and steadily escalating targeted campaign to discredit the plaintiff and deny her any further opportunity to observe or oppose their bad practices.

Of course, the plaintiff also must show that the defendants' conduct would dissuade a person of reasonable firmness from persisting in her protected speech, and sending a letter falsely accusing her of felony perjury, which purportedly also banned her from entering her usual place of business, and precipitated her suspension without pay, certainly qualifies on that score.

b.

The defendants argue that the plaintiff has failed to make out a viable substantive due process claim, principally because she has not alleged that she was "entirely excluded" from pursuing her profession. However, federal courts have held that a plaintiff may be able to make

out a substantive due process claim where the government action complained of essentially amounted to "blacklisting" her from a profession or line of business. *Stampfli v. Susanville Sanitary District*, No. 20-01566, 2021 WL 929660, at *5 (E.D. Cal. Mar. 11, 2021) ("The Ninth Circuit has recognized that 'there is substantive due process protection against government employer actions that foreclose access to a particular profession to the same degree as government regulation.' However, the Ninth Circuit has limited substantive due process claims for a public employer's violation of occupational liberty to extreme cases such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation." (quoting *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007)).  It is a fair inference that the letter in this case was intended to have that sort of categorical exclusionary impact, since it purported to bar the plaintiff indefinitely from performing the essential duties of her job, at least within Livingston County where she was assigned, and even banned her from entering the premises of her usual place of work.  That letter plainly was targeted to serve the defendants' goal of excluding the plaintiff from pursuing her professional duties as a probation officer, at least concerning probationers within their purview, which apparently comprised all of her assigned work.  That is a sufficient showing to make out a substantive due process claim based on professional blacklisting.  *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996-97 (9th Cir. 2007) ("[M]ost courts have rejected the claim that substantive due process protects the right to a particular public employment position, and we have yet to decide the issue. Engquist, however, premised her claim on interference with her ability to pursue a profession altogether.").

The Ninth Circuit held in *Engquist* that a plaintiff "can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions

that were arbitrary and lacking a rational basis." 478 F.3d 985 at 997. She has pleaded sufficient facts to satisfy those criteria, because there could be no rational basis for the defendants to make perjury accusations if there was no evidence of perjury to be had. The defendants insist that the plaintiff was not "permanently barred" from pursuing her job, but that is only because after an independent inquiry by the MDOC, and later after the unfounded criminal charges were dismissed, their false charges were quashed both by the plaintiff's employer and by the state trial court. In the interim, however, and particularly during the time that she was suspended without pay, the plaintiff alleged that she was excluded from engaging in her chosen profession, and it can be readily inferred that it was the defendants' intended goal to exclude her from her position indefinitely. The mere fact that they were unsuccessful in doing so because more reasonable minds prevailed and eventually waved off their false accusations does not absolve them for the consequences of their determined attempt to trample the plaintiff's rights by their unrelenting pursuit of those false charges.

c.

For the same reasons discussed above with respect to defendant Carberry, the pleading of the civil conspiracy charge against the County defendants is sufficient to survive a Rule 12 challenge.

4.

To prevail on a claim of tortious interference under Michigan law, the plaintiff must offer evidence of "(1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff.'" *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (quoting *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010)). "'[T]he

interference with a business relationship must be improper in addition to being intentional.'" *Ibid.* (quoting *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319, 326 (6th Cir. 2014)).

The plaintiff has made out all of the elements of her tortious interference claim. The complaint plainly states facts to support the inference that the plaintiff had a valid expectancy of a continuing employment relationship. The pleaded facts also suggest that the defendants allegedly disrupted that relationship, including by causing her to be suspended without pay, and by promulgating false accusations of perjury to her employer. Their conduct could be found to comprise several intentional torts, for all of the reasons stated above. The facts stated make out all of the required elements to survive a pleading sufficiency challenge.

5.

The plaintiff has alleged sufficient facts to avoid dismissal of her state law tort claims on the basis of governmental immunity at this early stage, because it may be inferred from the pleadings that when Taylor and Vailliencourt sent a letter to the plaintiff's employer falsely accusing her of committing perjury, they intended to harm her by obstructing or causing the termination of her employment. The defendants concede that in order to secure governmental immunity on an individual basis against an intentional tort suit they must show that their "acts were undertaken in good faith [or] were not undertaken with malice." *Odom v. Wayne County*, 482 Mich. 459, 480, 760 N.W.2d 217, 228 (2008) (holding that a governmental defendant is entitled to immunity for intentional torts if "(a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial"). The jury readily could find that the acts of pursuing and publicizing false and unfounded perjury charges were not in good

faith, if the plaintiff can prove her allegation that the cursory investigation that the defendants conducted in fact revealed "no evidence" of perjury, and that the defendants knew as much.

The defendants are not entitled to governmental immunity against the state law intentional tort claims at this stage of the case.

6.

Defendant Livingston County argues that the plaintiff has not pleaded sufficient facts to make out an independent constitutional tort against it.  "Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), a plaintiff suing a unit of local government, such as a county, must identify an unconstitutional policy or custom in order to prevail on a § 1983 claim against it."  *Cady*, 574 F.3d at 345 (quoting *Board of Cnty. Commr's v. Brown*, 520 U.S. 397, 403-04 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

The defendants contend that the *Monell* claim against the County is barred because, even if Vailliencourt was acting as a "final decision maker," the County cannot be held liable for his conduct since he was an "agent of the state."  However, for similar reasons as those discussed above with respect to sovereign immunity, Vailliencourt's actions apart from and preceding the filing of formal charges are not embraced by his statutory duty to prosecute crimes under state law, and the defendants have not made any showing that Vailliencourt cannot properly be regarded as the final decision maker with respect to both the allegedly unlawfully discriminatory charging decisions that were called out by the plaintiff, and the decision to undertake a campaign to have the plaintiff excluded from her profession by falsely accusing her of lying under oath.  It is well settled, of course, that "[a] single act by a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered' may suffice in demonstrating that policy or

- 26 -

custom." *Cady*, 574 F.3d at 345 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)).  The pleadings here sufficiently satisfy those criteria for a valid *Monell* claim.

III.

Certain parts of defendant Carberry's reply brief and attached exhibits are improper and must be stricken.  The Fourteenth Amendment claim against Carberry is subject to dismissal because it is based on the same facts as the false arrest claim, which is governed exclusively by the Fourth Amendment.  The Fourth Amendment claims against defendants Taylor and Vailliencourt are barred by prosecutorial and sovereign immunity, but the claims against them under the First and Fourteenth Amendments and the state law claims against both the individual defendants and the County are not foreclosed by any of the immunity defenses asserted.  The elements of the offenses including the requisites for municipal liability adequately are well pleaded.

Accordingly, it is **ORDERED** that the plaintiff's motion to strike defendant Carberry' reply brief (ECF No. 33) is **GRANTED IN PART**.  The defendant's exhibits (ECF No. 28-2, 28-3) and his arguments that reference them are **STRICKEN** from the record.

It is further **ORDERED** that defendant Carberry's motion to dismiss (ECF No. 10) is **GRANTED IN PART AND DENIED IN PART**.  The Fourteenth Amendment claim against him in Count III of the complaint is **DISMISSED**, and the motion is **DENIED** in all other respects.

It is further **ORDERED** that the motion to dismiss by defendants Vailliencourt, Taylor, and Livingston County (ECF No. 17) is **GRANTED IN PART AND DENIED IN PART**.  The

Fourth Amendment claims as against defendants Taylor and Vailliencourt in Count I of the complaint are **DISMISSED**, and the motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 29, 2021